UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>Plaintiff, )<br>)<br>v. )<br>)<br>ROSA BOWDEN, )<br>Defendant. ) | No. **3:22-cr-8**<br><br>Judges: **VARLAN / McCOOK** |

## PLEA AGREEMENT

The United States of America, by the Acting United States Attorney for the Eastern District of Tennessee, and defendant, ROSA BOWDEN ("defendant"), and defendant's attorney, Jonathan Moffat, have agreed upon the following:

1. Defendant will waive indictment and arraignment and plead guilty to an information charging her with the following offenses:

    (a) **Counts One and Two**: theft of public money, in violation of 18 U.S.C. § 641—that is, defendant knowing and willfully stole and converted to her own use or the use of another, monies belonging to the United States of more than $1,000.

    *Penalties.* The punishment for this offense is up to ten years' imprisonment, a fine of up to $250,000, up to three years of supervised release, and a $100 mandatory assessment.

2. In consideration of defendant's guilty plea, the United States agrees not to further prosecute defendant in the Eastern District of Tennessee for any other non-tax criminal offenses committed by defendant that are related to the charges contained in the information and known to the United States Attorney's Office for the Eastern District of Tennessee at the time this plea agreement is signed by both parties.

3. Defendant has read the information, discussed the charges and possible defenses with defense counsel, and understands the crimes charged. Specifically, the elements of the crimes charged are as follows:

(a) **Counts One and Two** – Theft of Public Money, in violation of 18 U.S.C. § 641: (i) defendant knowingly and willfully stole money with the intention of depriving the owner of the use or benefit of the money; (ii) the money belonged to the United States; and (iii) the value of the money was more than $1,000.

4. In support of defendant's guilty plea, defendant agrees and stipulates to the following facts, which satisfy the offense elements. These are the facts submitted for purposes of defendant's guilty plea. They do not necessarily constitute all the facts in the case. Other facts may be relevant to sentencing. Both defendant and the United States retain the right to present additional facts to the Court to ensure a fair and appropriate sentence in this case.

(a) The Social Security Administration ("SSA") was an independent agency of the United States within the United States government that administered programs under the Social Security Act, Title 42, U.S.C. § 301, et seq. ("the Act"). These programs included the Social Security Old-Age, Survivors, and Disability Insurance and related programs under Title II of the Act ("Title II Program"). These programs also included the Supplemental Security Income for the Aged, Blind, and Disabled and related programs under Title XVI of the Act ("SSI Program").

(b) The Title II Program included the Retirement Insurance Benefits Program, which paid monthly cash benefits to individuals who had worked and paid taxes into Social Security. To be eligible for monthly cash benefits, individuals must have reached the age of 62 and paid a portion of their prior wages into the program. Benefits were determined based on average salary and number of years of employment. The Title II Program also included the

Survivor's Insurance Benefits Program, which provided benefits to a retiree's surviving spouse in an amount based on the retiree's contributions.

(c) The SSI Program paid monthly cash benefits to individuals who had been found by the SSA to be medically disabled, and who have, in addition, been found by SSA to be eligible for the SSI Program based on financial need, as determined in relation to both "income" and "resources" (as those terms are defined for purposes of the Act). Eligibility for SSI Program benefits depended upon the severity of the applicant's disability. The amount of benefits depended on: (i) how much other income the beneficiary received; (ii) the beneficiary's living arrangements; and (iii) other circumstances affecting the beneficiary's financial needs. Eligibility for the SSI Program was conditioned on the beneficiary providing complete and accurate information to SSA regarding income and living arrangements, both at the time of the application and on an ongoing basis.

### *BOWDEN's unlawful receipt of Title II Survivor Benefits*

(d) M.M began collecting Title II Survivor benefits when her husband A.M. died in or around 1975. M.M. died on or about December 31, 1990.

(e) SSA was unaware of M.M.'s death and, as a result, continued to pay M.M.'s SSA Title II Survivor benefits. From in or around January 1991 to in or around December 2003, M.M.'s SSA Title II Survivor benefits were unlawfully received by M.M.'s nephew, J.B.

(f) BOWDEN married J.B. in August 1999. Beginning in or around August 1999, J.B. and BOWDEN unlawfully received M.M.'s Title II Survivor benefits.

(g) J.B. died in December 2003.

(h) Beginning in or around January 2004, BOWDEN unlawfully received M.M.'s Title II Survivor benefits. M.M.'s Title II Survivor benefits were electronically deposited

into a bank account in the names of M.M. and J.B. After J.B.'s death in December 2003, BOWDEN took exclusive control of that bank account. M.M.'s SSA Title II Survivor benefits were the only deposits made to the bank account.

(i) From in or around January 2004 to in or around March 2020, BOWDEN knowingly received approximately **$164,886** in unlawful SSA Title II Program Survivor benefits.

(j) BOWDEN knew that her receipt of M.M.'s SSA Title II Survivor benefits was unlawful, and she took steps to conceal her receipt of M.M.'s Title II Survivor benefits, including by signing M.M.'s name to checks BOWDEN used to pay her personal expenses.

(k) BOWDEN acted with intent to deprive the SSA of the use or benefit of Title II Survivor benefits.

*BOWDEN's unlawful receipt of Title XVI SSI Benefits*

(l) BOWDEN applied for Title XVI SSI benefits in or around October 1998. On her application, BOWDEN falsely claimed that she was not receiving any income. In fact, BOWDEN was unlawfully receiving M.M.'s Title II Survivor benefits.

(m) BOWDEN began collecting SSI benefits in or around November 1998.

(n) BOWDEN failed to notify SSA that she married J.B. in August 1999. Had BOWDEN notified SSA that she married J.B. in August 1999, SSA would have reduced or ceased her SSI benefits. Had SSA known that BOWDEN was unlawfully receiving M.M.'s Title II Survivor benefits, SSA would have denied her application for SSI benefits.

(o) From in or around November 1998 to in or around March 2020, BOWDEN knowingly received approximately **$65,380** in unlawful SSA Title XVI SSI benefits.

(p) BOWDEN knew that her receipt of SSI benefits was unlawful, and she took steps to conceal her receipt of SSI benefits, including by impersonating M.M. during a phone call

with an SSA representative and failing to update her marriage status during SSA's regular redetermination-of-benefits inquiries.

    (q)    BOWDEN acted with intent to deprive the SSA of the use or benefit of Title XVI SSI benefits.

    (r)    Each of these acts occurred in the Eastern District of Tennessee.

5.    Defendant is pleading guilty because she is in fact guilty. Defendant understands that, by pleading guilty, she is giving up several rights, including:

    (a)    the right to be indicted by a grand jury for these crimes;

    (b)    the right to plead not guilty;

    (c)    the right to a speedy and public trial by jury;

    (d)    the right to assistance of counsel at trial;

    (e)    the right to be presumed innocent and to have the burden of proof placed on the United States to prove defendant guilty beyond a reasonable doubt;

    (f)    the right to confront and cross-examine witnesses against defendant;

    (g)    the right to testify on one's own behalf, to present evidence in opposition to the charges, and to compel the attendance of witnesses; and

    (h)    the right not to testify and to have that choice not used against defendant.

6.    The parties agree that the appropriate disposition of this case is the following:

    (a)    The Court may impose any lawful term of imprisonment, any lawful fines, and any lawful term of supervised release up to the statutory maximum.

    (b)    The Court will impose special assessment fees as required by law.

    (c)    The Court may order forfeiture as applicable and restitution as appropriate.

Page 5 of 10

Case 3:22-cr-00008-TAV-JEM   Document 2   Filed 01/31/22   Page 5 of 10   PageID #: 8

(d) Pursuant to Rule 11(c)(1)(B), at sentencing, the United States agrees to recommend that, pursuant to U.S.S.G. § 2B1.1(b)(1)(F), the total loss amount is more than $150,000 but not more than $250,000. This recommendation is not binding on the Court, and in the event the Court rejects this recommendation, defendant may not withdraw her guilty plea or rescind this plea agreement.

7. No promises have been made by any representative of the United States to defendant as to what the sentence will be in this case. Any estimates or predictions made to defendant by defense counsel or any other person regarding any potential sentence in this case are not binding on the Court and may not be used as a basis to rescind this plea agreement or withdraw the defendant's guilty plea. Defendant understands that the sentence in this case will be determined by the Court after it receives the presentence investigation report from the United States Probation Office and any information presented by the parties. Defendant acknowledges that the sentencing determination will be based upon the entire scope of defendant's criminal conduct, her criminal history, and pursuant to other factors and guidelines as set forth in the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553.

8. Given defendant's agreement to plead guilty, the United States will not oppose a two-level reduction for acceptance of responsibility under the provisions of § 3E1.1(a) of the Sentencing Guidelines. Further, if defendant's offense level is 16 or greater, and defendant is awarded the two-level reduction pursuant to § 3E1.1(a), the United States agrees to move the Court, at or before the time of sentencing, to decrease the offense level by one additional level pursuant to § 3E1.1 (b) of the Sentencing Guidelines. Should defendant engage in any conduct or make any statements that are inconsistent with accepting responsibility for her offense, including violations of conditions of release or the commission of any additional offense(s) prior to sentencing, the

United States will be free to decline to make such motion, to withdraw that motion if already made, and to recommend to the Court that defendant not receive any reduction for acceptance of responsibility under § 3E1.1 of the Sentencing Guidelines.

9. Defendant agrees to pay the special assessment in this case prior to sentencing.

10. Defendant agrees that the Court shall order restitution, pursuant to any applicable provision of law, for any loss caused to the Social Security Administration. Defendant agrees, pursuant to 18 U.S.C. §§ 3663(a)(3) and 3663A, that the order of restitution, which represents the total amount of unlawful benefits paid by the SSA as a result of defendant's conduct, is **$230,266**.

11. Defendant agrees to pay all fines and restitution imposed by the Court to the Clerk of Court. Defendant also agrees that the full fine and/or restitution amount(s) shall be considered due and payable immediately. If defendant cannot pay the full amount immediately and is placed in custody or under the supervision of the Probation Office at any time, defendant agrees that the Bureau of Prisons and the Probation Office will have the authority to establish payment schedules to ensure payment of the fine and/or restitution. Defendant further agrees to cooperate fully in efforts to collect any financial obligation imposed by the Court by set-off of federal payments, execution on non-exempt property, and any other means the United States deems appropriate. Defendant and counsel also agree that defendant may be contacted post-judgment regarding the collection of any financial obligation imposed by the Court without notifying defendant's counsel and outside the presence of defendant's counsel. To facilitate the collection of financial obligations to be imposed with this prosecution, defendant agrees to disclose fully all assets in which she has any interest or over which she exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party. In furtherance of this agreement, defendant additionally agrees to the following specific terms and conditions:

(a) If so requested by the United States, defendant will promptly submit a completed financial statement to the United States Attorney's Office, in a form it provides and as it directs. Defendant promises that such financial statement and disclosures will be complete, accurate, and truthful.

(b) Defendant expressly authorizes the United States Attorney's Office to obtain a credit report on the defendant to evaluate defendant's ability to satisfy any financial obligation imposed by the Court.

(c) If so requested by the United States, defendant will promptly execute authorizations on forms provided by the United States Attorney's Office to permit the United States Attorney's Office to obtain defendant's financial and tax records.

12. Defendant acknowledges that the principal benefits to the United States of this agreement include the conservation of limited government resources and bringing a certain end to the case. Accordingly, in consideration of the concessions made by the United States in this agreement and as a further demonstration of defendant's acceptance of responsibility for the offense committed, defendant voluntarily, knowingly, and intentionally agrees to the following:

(a) Defendant will not file a direct appeal of her conviction or sentence with one exception: defendant retains the right to appeal a sentence imposed above the sentencing guideline range determined by the Court or above any mandatory minimum sentence deemed applicable by the Court, whichever is greater. Defendant also waives the right to appeal the Court's determination as to whether her sentence will be consecutive or concurrent to any other sentence.

(b) Defendant will not file any motions or pleadings pursuant to 28 U.S.C. § 2255 or otherwise collaterally attack her conviction or sentence, with two exceptions: defendant

Page 8 of 10

Case 3:22-cr-00008-TAV-JEM   Document 2   Filed 01/31/22   Page 8 of 10   PageID #: 11

retains the right to file a § 2255 motion as to (i) prosecutorial misconduct and (ii) ineffective assistance of counsel.

(c) Defendant will not, whether directly or by a representative, request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

13. This plea agreement becomes effective once it is signed by the parties and is not contingent on defendant's entry of a guilty plea. If the United States violates the terms of this agreement, defendant will have the right to withdraw from this agreement. If defendant violates the terms of this agreement in any way (including, without limitation, by failing to enter a guilty plea as agreed herein, moving to withdraw guilty plea after entry, or by violating any court order or any local, state, or federal law pending the resolution of this case), then the United States will have the right to void any or all parts of the agreement and may also enforce whatever parts of the agreement it chooses. In addition, the United States may prosecute defendant for any and all federal crimes that she committed related to this case, including any charges that were dismissed and any other charges the United States agreed not to pursue. Defendant expressly waives any statute-of-limitations defense and any constitutional or speedy trial or double jeopardy defense to prosecution for the conduct covered by this agreement. Defendant also understands and agrees that a violation of this agreement by defendant does not entitle him to withdraw her guilty plea.

14. The United States will file a supplement in this case, as required in every case by the Local Rules of the United States District Court for the Eastern District of Tennessee, even

though there may or may not be any additional terms. If additional terms are included in the supplement, they are hereby fully incorporated herein.

15. This plea agreement and supplement constitute the full and complete agreement and understanding between the parties concerning defendant's guilty plea to the above-referenced charges. There are no other agreements, promises, undertakings, or understandings between defendant and the United States. The parties understand and agree that the terms of this agreement can be modified only in writing signed by all of the parties and that any and all other promises, representations, and statements whether made before, contemporaneous with, or after this agreement, are null and void.

Francis M. Hamilton III
Acting United States Attorney

1/31/2022
Date

By: *William A. Roach Jr.*
William A. Roach, Jr.
Assistant United States Attorney

1-28-22
Date

*Rosa Bowden*
Rosa Bowden
Defendant

1·28·2022
Date

*Sarah Olesiuk*
~~Jonathan Moffat~~ Sarah H. Olesiuk
Attorney for the Defendant